IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| FREDERICK ROSS PEAVY, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. G-06-443 |
| § | |
| STEPHEN H. STRIEBEL d/b/a § | |
| FDL Inc., d/b/a FLAIR DESIGN Ltd., § | |
| § | |
| Defendant. § | |

## ORDER STAYING LITIGATION

This action arises out of personal injuries allegedly suffered by Plaintiff Frederick Ross Peavy ("Plaintiff") when, on two separate occasions, the seat of the barstool upon which he sitting allegedly separated from its four legs, causing Plaintiff to fall. The barstools were distributed by FDL, Inc. ("FDL"), a now bankrupt corporation. Defendant Stephen H. Striebel ("Defendant") was the sole owner and shareholder of FDL. Defendant filed a Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, and Plaintiff timely filed a Response thereto. Defendant filed a Reply to Plaintiff's Response. For the reasons stated below, the Court will not rule on the Motion to Dismiss at this time and instead **STAYS** the proceedings in this action pending a ruling from the Indiana Bankruptcy Court in which FDL's case is pending.[1]

**I. Background**

On or about December 28, 2005, Plaintiff purchased two barstools allegedly manufactured

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

1

and distributed by FDL. On the same day, Plaintiff alleges that, while he was sitting upon one of the barstools, the seat separated from its four legs, causing Plaintiff to fall thirty inches and injure his lower back. Then, the next day, Plaintiff alleges that—despite his experience the previous day—he decided to sit on the second barstool, which collapsed in a similar manner. Plaintiff claims that he again fell thirty inches, which further aggravated the lower back injury he allegedly endured the night before.

Plaintiff originally filed this action against FDL and Defendant. On August 7, 2006, FDL filed a Suggestion of Bankruptcy with this Court, and the Court administratively closed the case pending the Bankruptcy resolution. On August 18, 2006, Plaintiff moved to dismiss FDL with prejudice, and the Court granted his motion.

In September 2006, Plaintiff moved to reopen the case, and the motion was unopposed. The Court granted the unopposed motion. Shortly thereafter, Defendant filed his Motion to Dismiss for Lack of Personal Jurisdiction.

Defendant is an Indiana resident and alleges that he has no individual contacts with Texas. Plaintiff claims that even if Defendant has no individual contacts with Texas, the Court can assert personal jurisdiction over him because, according to Plaintiff, the Court may assert general jurisdiction over FDL, and FDL is Defendant's alter ego.

## II. Legal Standard

Defendant seeks to dismiss Plaintiff's claims against him for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2). A nonresident defendant is subject to personal jurisdiction in this District if: (1) he is amenable to service of process under Texas's long-arm statute, and (2) the exercise of personal jurisdiction over him is consistent with due process. *See Stripling v. Jordan*

*Prod. Co., L.L.C.*, 234 F.3d 863, 869 (5th Cir. 2000); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Texas long-arm statute grants jurisdiction over a nonresident defendant "doing business" in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042 (Vernon 1997). The phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, and therefore the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson* Co., 9 F.3d 415, 418 (5th Cir. 1993); *Williams v. Castro*, 21 F. Supp. 2d 691, 692 (S.D. Tex. 1998); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–57 (Tex. 1990).

Whether the exercise of personal jurisdiction over Defendant is consistent with the Due Process Clause of the United States Constitution requires a two-pronged inquiry. First, the Court must conclude that Defendant has "minimum contacts" with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945). Second, the Court must determine that requiring Defendant to litigate in this forum does not offend "traditional notions of fair play and substantial justice." *Id.*; *see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994); *Ruston Gas Turbines*, 9 F.3d at 418.

The "minimum contacts" prong can be satisfied by finding either general or specific jurisdiction over Defendant. *See Wilson*, 20 F.3d at 647. A defendant's contacts unrelated to the cause of action may confer general jurisdiction, but these contacts must be both "continuous and systematic" and "substantial." *Id.* at 647, 650–51. A defendant's limited contact with the forum state may support specific jurisdiction if such contacts give rise to the cause of action. *See Ruston Gas Turbines*, 9 F.3d at 419 ("A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). Specific

3

jurisdiction is proper if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239–40, 2 L. Ed. 2d 1283 (1958)). A defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there." *Id.* at 474, 105 S. Ct. at 2183 (citing *World-Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 490 (1980)).

Generally, the plaintiff bears the burden of establishing the Court's jurisdiction over a nonresident defendant. *See Wilson*, 20 F.3d at 648. However, it is sufficient for the plaintiff to make a prima facie showing of jurisdiction, and any conflicts between affidavits are resolved in favor of the plaintiff. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir. 1990); *Guyton v. Pronav Ship Mgmt., Inc.*, 139 F. Supp. 2d 815, 818 (S.D. Tex. 2001).

**III. Analysis**

*A. Jurisdiction over Defendant as an Individual*

Plaintiff does not allege that his injury arose from Plaintiff's contacts with Texas. Thus, specific jurisdiction does not exist, and the Court must determine whether Plaintiff has established that Defendant has enough contacts with Texas to justify the exercise of general jurisdiction. Plaintiff asserts that Defendant placed his products in the stream of commerce in Texas, which, according to Plaintiff, constitutes systematic and continuous contacts with the state. Defendant alleges that the only contact he has had with Texas is associated with his role as President of FDL and that such contacts do not impute to him as an individual.

Under Texas law, Defendant cannot be held personally liable for the contracts he signed in his official capacity. *See Pabich v. Kellar*, 71 S.W.3d 500, 508 (Tex. App—Ft. Worth 2002) ("The fact that [the plaintiff] was the sole shareholder and president of the corporation does not necessarily make him liable under the contracts he signs on its behalf or the injuries resulting to others as a result of those contracts."); *Star Supply Co. v. Jones*, 665 S.W.2d 194, 198 (Tex. App.—San Antonio 1984) ("The signature of a corporate officer on a contract does not render it his personal contract, where in the body of the contract, it is purported to be a corporation contract."). It follows then that the State cannot gain personal jurisdiction over Defendant merely because he signed contracts in his official capacity. Plaintiff has not presented any evidence indicating that Defendant signed any contracts or otherwise had any contacts with Texas in his individual capacity. Thus, this Court may not exercise jurisdiction over Defendant as an individual.

*B. Alter Ego Jurisdiction*

Plaintiff claims that, even if the Court cannot exercise jurisdiction over Defendant as an individual, it may exercise jurisdiction over Defendant through FDL because FDL is Defendant's alter ego. In the Fifth Circuit, a district court may "exercise personal jurisdiction over an individual . . . that would not ordinarily be subject to personal jurisdiction in that court when the individual . . . is an alter ego . . . of a corporation that would be subject to personal jurisdiction in that court." *Patin v. Thoroughbred Power Boats*, 294 F.3d 640, 653 (5th Cir. 2002). The standard for alter ego jurisdiction is "less stringent" than the standard for alter ego liability because "'only a prima facie showing is required on a jurisdiction motion.'" *Hargrave v. Fibreboard*, 710 F.2d 1154, 1161 (5th Cir. 1983) (quoting 4 Wright & Miller, *supra*, § 1068 at 250 (2d ed. 1987)). This Court looks to the law of the state of incorporation to determine whether the corporate veil should be pierced. *See House*

*v. 22 Tex. Servs., Inc.*, 60 F. Supp. 2d 602, 609 (S.D. Tex. 1999) (citations omitted) ("The Court looks to the law of the state of incorporation for each corporate Defendant to determine whether its corporate entity should be disregarded."); *Amoco Chem. Co. v. Tex Tin Corp.*, 925 F. Supp. 1192, 1201 (S.D. Tex. 1996) (same); Restatement (Second) of Conflict of Laws § 309 (1971) ("The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders . . . .").

Indiana is FDL's state of incorporation, so whether Plaintiff has made a prima facie showing that FDL is the alter ego of Striebel will be determined according to Indiana law. In Indiana, "the separate existence of a corporation may be disregarded to prevent injustice when a third party transacts business with an individual who fraudulently uses a corporation as a shield from liability." *Lambert v. Farmers Bank*, 519 N.E.2d 745, 747 (Ind. Ct. App. 1988). The third party is required to "show both ownership and control of the corporation by the shareholder." *Id.* (citing *Hinds v. McNair*, 129 N.E.2d 553, 566 (Ind. 1955)). The alter ego corporation must be "so organized and controlled and its affairs so conducted that it is a mere instrumentality or conduit of another corporation." *Detrick v. Midwest Pipe & Steel, Inc.*, 598 N.E.2d 1074, 1080 (Ind. Ct. App. 1992) (citing *Stacey-Rand, Inc. v. J.J. Holman, Inc.*, 527 N.E.2d 726, 728 (Ind. Ct. App. 1988), *reh. denied*). "While no one talismanic fact will justify with impunity piercing the corporate veil, a careful review of the entire relationship between various corporate entities, their directors and officers may reveal that such an equitable action is warranted." *Stacey-Rand, Inc.*, 527 N.E.2d at 728 (citing *Burger Man, Inc. v. Jordan Paper Prods., Inc.*, 352 N.E.2d 821, 834 (Ind. App. 1976)).

Plaintiff has not set forth sufficient evidence indicating that FDL is Defendant's alter ego. However, Plaintiff has requested permission to conduct discovery into the matter. Plaintiff points out

that discovery on the jurisdictional issue is generally appropriate. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13, 98 S. Ct. 2380, 2389 n.13, 57 L. Ed. 2d 253 (1977) (citations omitted). However, the instant inquiry is set apart from the ordinary alter ego jurisdictional inquiry because the alleged alter ego is a bankrupt corporation. If Plaintiff is successful in showing that FDL is Defendant's alter ego, they are considered "one and the same." *Smith v. McLeod Distrib., Inc.*, 744 N.E.2d 459, 464 (Ind. Ct. App. 2000). As such, the Bankruptcy Code, which unquestionably applies to the bankrupt FDL, may impose an automatic stay on judicial action against Defendant.

Under the Bankruptcy Code, once a bankruptcy petition is filed, an automatic stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[2] 11 U.S.C. § 362(a)(3). "Property of the estate" includes "all legal and equitable interests of the debtor in property as of the commencement of the case."[3] 11 U.S.C. § 541(a). The Court has been presented with very limited information regarding FDL's bankruptcy, and notes that it is possible that the bankruptcy estate has an interest in Defendant's property. *See, e.g.*, *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1154 (5th Cir. 1987) (applying the

---

[2] Under section 362(a)(1) of the Bankruptcy Code, when a bankruptcy petition is filed, all judicial matters proceeding against the "*debtor*" are subject to an automatic stay pending the resolution of the bankruptcy proceedings. § 362(a)(1) (emphasis added). In *S.I. Acquisition*, the Fifth Circuit did not reach the issue of whether a § 362(a)(1) stay could apply against a nonbankrupt entity. *See Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1151 n.10 (5th Cir. 1987). Intuitively, if the debtor and nondebtor are "one and the same," then the stay should apply to both. However, the use of the term "*debtor*" in the statute could preclude such an interpretation.

[3] Defendant asserts, without citing authority, that this claim belongs to the bankruptcy trustee. Under Indiana law, "a bankruptcy trustee can bring an alter ego claim of action. [Indiana] law permits the alter ego claim to be asserted by the trustee in pursuing all funds available as Section 541 property of the estate." *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1346 (7th Cir. 1987). However, "the trustee has no standing to bring *personal* claims of creditors." *Id.* at 1348 (emphasis in original).

7

automatic stay in a state court contract action against three corporations that were alleged to be "one and the same" with a bankrupt corporation). Thus, in an abundance of caution, the Court finds that whether FDL is the alter ego of Striebel and whether such a relationship renders the automatic stay applicable to actions against Striebel is best left to the discretion of the Indiana Bankruptcy Court in which FDL's bankruptcy case is pending. As such, the Court will not entertain Plaintiff's alter ego theory until Plaintiff has either (1) obtained an Order from the Indiana Bankruptcy Court lifting the stay; or (2) can present the Court with definitive caselaw instructing that the automatic stay does not apply when a bankrupt corporation is alleged to be the alter ego of an individual who is a defendant in a tort action based upon the defendant's activities as president and sole shareholder of the bankrupt corporation. Thus, this action is **STAYED** pending a ruling from the Indiana Bankruptcy Court. However, the Court encourages Plaintiff to file a Motion for Reconsideration under Federal Rule of Civil Procedure 60(b)(6) if Plaintiff can prove that the automatic stay does not apply.

## IV. Conclusion

In conclusion, Plaintiff has not offered the Court any evidence that the exercise of jurisdiction over Defendant is appropriate based on his individual contacts with Texas. Plaintiff also has not supported his assertion that FDL is Defendant's alter ego with sufficient facts, but he requests additional time to conduct discovery regarding the jurisdictional issue. If FDL is Defendant's alter ego, the automatic stay that applies to judicial actions against bankrupt entities may also apply to this case. This determination is best left to the Indiana Bankruptcy Court. Accordingly, this Court **STAYS** the proceedings in this action pending a ruling from the Indiana Bankruptcy Court. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 14th day of February, 2007, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge